APPENDIX

Richard DEMAREST,
Petitioner–Appellant,

v.

James MANSPEAKER, Clerk of United States District Court for the District of Colorado; and CATHY, Last Name Unknown, Defendants–Appellees.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald Brooks TIPPETT, Defendant,

Edgar Lee Durre, Movant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald Brooks TIPPETT, Defendant,

Ronald Reese, Movant–Appellant.

In the Matter of GRAND JURY Y–87–1, of the SUBPOENA OF Ronald REECE, Movant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald Brooks TIPPETT, Defendant,

Elizabeth Durre, Movant–Appellant.

Nos. 88–1899, 88–1972, 88–1973, 88–2782 and 88–2327.

United States Court of Appeals, Tenth Circuit.

Sept. 5, 1989.

carcerated for criminal offenses, either in federal or state institutions, are entitled to witness fees pursuant to 28 U.S.C. § 1821 for testifying in separate criminal proceedings before a federal court or grand jury. We hold that they are not, and therefore affirm the judgments from which these appeals were taken.[1]

In pertinent part, 28 U.S.C. § 1821 provides as follows:

"(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.

. . . . .

(b) A witness shall be paid an attendance fee of $30 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

. . . . .

(d)(1) A subsistence allowance shall be paid to a witness (other than a witness who is incarcerated) when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day.

. . . . .

Richard S. Demarest, Edgar Lee Durre, Ronald L. Reece, and Elizabeth Durre, pro se.

Michael J. Norton, U.S. Atty., and Douglas W. Curless, Asst. U.S. Atty., Denver, Colo., for U.S.

Before LOGAN and EBEL, Circuit Judges, and COOK, District Judge.*

LOGAN, Circuit Judge.

The issue presented in these consolidated appeals is whether appellants, who are in-

___

* The Honorable H. Dale Cook, Chief Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

(4) When a witness is detained pursuant to section 3149 of title 18 for want of security for his appearance, he shall be entitled for each day of detention when not in attendance at court, in addition to his subsistence, to the daily attendance fee provided by subsection (b) of this section."

Appellants contend that the plain language of subsections (a)(1) and (b) mandate the payment of attendance fees to a witness, regardless of whether or not that person is incarcerated. They also point to the qualifying language regarding incarcerated individuals contained in subsection (d)(1) and argue that Congress would have included similar language in subsection (a)(1) or (b) had it intended to preclude prisoners from receiving the fee. On its face, this is an appealing argument.

We note, however, that there is another plausible reading of the statutory language and reason for the reference to incarceration in subsection (d)(1). When Congress referred to incarcerated witnesses in subsection (d)(1) it could have intended to clarify what was impliedly set forth in (d)(4)— that an individual incarcerated under the material witness statute, 18 U.S.C. § 3144 (formerly 18 U.S.C. § 3149), is not to receive a subsistence *allowance* "in addition to his subsistence." 28 U.S.C. § 1821(d)(4).

Despite the unqualified wording of subsections (a)(1) and (b), strong evidence exists to support the view that Congress never intended § 1821 to apply to individuals incarcerated for criminal acts. Since at least the year 1900, the Treasury Department has taken the position that imprisoned individuals, other than those detained as a material witness, are not entitled to witness fees. *In re Witness Fees for Prisoner,* 533 F.Supp. 401, 403 & n. 5 (E.D.Pa.) (citing 6 Dec.Comp.Treas. 588, 588 (1900)),

*aff'd per curiam sub nom. In re Grand Jury Matter (Witness RW),* 697 F.2d 103, 104 (3d Cir.1982); *Marchese v. United States,* 197 Ct.Cl. 102, 453 F.2d 1268, 1271 (1972).[2] In 1970 and 1972, despite the existence of similar qualifying language regarding incarcerated individuals contained in the then-existing counterpart to current subsection (d)(1),[3] two different federal appellate courts ruled that § 1821 did not entitle criminal inmates to witness attendance fees. *Meadows v. United States Marshal,* 434 F.2d 1007 (5th Cir.1970) (per curiam); *Marchese,* 453 F.2d at 1271.

Six years after the *Marchese* decision, in 1978, Congress substantially reorganized § 1821 into its current form. Nowhere in the express language of the revisions or in the legislative history did Congress indicate criminal inmates, other than material witnesses detained for want of security for his appearance, were entitled to a witness fee. Had Congress meant to change the existing judicial and administrative interpretations of § 1821, it surely could have done so in more express terms. *Cf. FDIC v. Philadelphia Gear Corp.,* 476 U.S. 426, 437, 106 S.Ct. 1931, 1937, 90 L.Ed.2d 428 (1986) ("When the statute giving rise to the longstanding interpretation has been reenacted without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" (quoting *NLRB v. Bell Aerospace,* 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974)). Moreover, since the 1978 amendment, other courts have rejected the appellants' interpretation of § 1821, *United States v. Garmany,* 762 F.2d 929, 933 n. 2 (11th Cir. 1985); *In re Grand Jury Matter,* 697 F.2d at 104, as has the Department of Justice Regulations. *See* 28 C.F.R. § 21.4(d) (pub-

---

**2.** In addition to their statutory language arguments, plaintiffs rely on *Hurtado v. United States,* 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973) (incarcerated material witnesses entitled to attendance fee for number of days detained during trial), to support their position. We agree with the *In re Witness Fees* court, for the reasons stated therein, that *Hurtado* is inapposite to the present case. *See* 533 F.Supp. at 402–03.

**3.** The incarceration provision of old § 1821 provided that "[w]itnesses ... who are not in custody" were entitled to a subsistence allowance. The other pertinent provisions of old § 1821, including the attendance fee provision, are substantially similar to current § 1821, although significantly restructured.

lished May 1, 1986) ("A witness in custody for purposes other than 18 U.S.C. 3149 [now § 3144] is ineligible to receive the attendance and subsistence fees provided by this section.").

Other compelling reasons support the view that incarcerated prisoner witnesses should not receive fees for their appearances. First, Congress expressly stated that the 1978 revision of § 1821 was necessary because existing witness fees and allowances "no longer compensate[d] the average witness for the actual costs which witness service entails." H.R.Rep. No. 95–1651, 95th Cong., 2d Sess. 2, *reprinted in* 1978 U.S.Code Cong. & Ad.News 4631, 4631. Beyond their loss of the very modest compensation they might receive from participating in prison job programs, prisoners generally do not incur financial costs serving as a witness. They are transported at the expense of the government, accompanied by government-paid security personnel. Second, if inmates were to receive a $30 fee for every day they attend court to serve as a witness, which is much more than they make working in prison industries, it is not difficult to imagine the potential abuses that might result. There would be greater temptation to file suits and subpoena friends among inmates as witnesses, not only for the trip they would receive outside the prison, but for the profit from the witness fee.

AFFIRMED.

EBEL, Circuit Judge, dissenting:

In my view, the majority mistakenly has relied upon congressional silence and upon the majority's own policy desires to abrogate the plain language of the statute. It is wrong to use the silence of legislative history to contradict or modify unambiguous text: "[C]ongressional silence, no matter how 'clanging,' cannot override the words of the statute." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 13, 105 S.Ct. 3275, 3284 n. 13, 87 L.Ed.2d 346 (1985). Moreover, although I do not quarrel with the majority's policy concerns, those arguments must be addressed to Congress rather than this court. We have

no authority to modify the plain language of a statute based upon what we wished it said: "[N]o matter how unwise or unsatisfactory the ... [statutory provision], the Constitution provides no license to impose ... [other terms] we might think fair and just. That task belongs to Congress, not to us." *Hurtado v. United States,* 410 U.S. 578, 591, 93 S.Ct. 1157, 1165, 35 L.Ed.2d 508 (1973). Accordingly, I dissent.

The language of 28 U.S.C. § 1821 is clear and unambiguous. Subsection (a)(1) provides that "*a witness* in attendance at any court of the United States ... shall be paid the fees and allowances provided by this section." (Emphasis added.) Nothing in the statute states that "a witness" excludes witnesses who happen to be prisoners.

If there were any doubt as to whether "a witness" includes incarcerated witnesses, subsection (d)(1) settles the matter. That section provides that a witness *who is not incarcerated* is entitled to receive an additional subsistence allowance when the witness is required to stay overnight:

A subsistence allowance shall be paid to *a witness (other than a witness who is incarcerated)* when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day.

28 U.S.C. § 1821(d)(1) (emphasis added).

Subsection (d)(1) necessarily assumes that the phrase "a witness" includes "a witness who is incarcerated" because Congress felt it necessary in subsection (d)(1) expressly to carve out incarcerated witnesses from the phrase "a witness" when Congress did not want to include incarcerated witnesses. Thus the phrase "a witness" contained in subsection (a)(1), which does not carve out incarcerated witnesses, likewise must include "a witness who is incarcerated." No other reading is possible without ignoring the text's plain language or divorcing the statute's subsections from each other.

Further, subsection (e) provides the one and only category of persons who are not entitled to receive witness attendance fees

under subsection (a)(1)—illegal aliens.[1] Thus, Congress plainly knew how to exclude expressly a class of persons from the broad category of "witnesses" who are entitled to attendance fees, and Congress did so. But that exclusion did *not* encompass prisoners (other than, presumably, alien prisoners).

In response, the majority presents four arguments for its view that Section 1821 does not mean what it says.

First, the majority contends that the reference to "a witness who is incarcerated" in subsection (d)(1) might refer only to a witness who is "detained" pursuant to the material witness statute described in subsection (d)(4).[2] The problem with that argument is that subsection (d)(1) says nothing of the sort. Subsection (d)(1) does not mention the material witness statute, but rather refers to all witnesses who are "incarcerated." In contrast, subsection (d)(4) does refer specifically to the material witness statute and uses the narrower phrase "witness [who] is *detained*" rather than subsection (d)(1)'s broader phrase "witness who is *incarcerated*." Thus, there is no statutory indication that Congress intended the reference to "a witness who is incarcerated" in subsection (d)(1) to mean only "a witness [who] is detained" pursuant to the material witness statute described in subsection (d)(4). Indeed, the language of the

two subsections indicates just the opposite.[3]

Second, the majority relies upon the decisions of three circuit courts and the Court of Claims holding that prisoners are not entitled to witness fees.[4] However, none of those cases contains an analysis of the plain language of the statute or an explanation of why the unambiguous text should not be given effect. The district court's opinion affirmed by the Third Circuit, *In re Witness Fees for Prisoner*, 533 F.Supp. 401 (E.D.Pa.), *aff'd sub nom. In re Grand Jury Matter (Witness RW)*, 697 F.2d 103 (3d Cir.1982), at least mentioned the difficulty engendered by the language of subsections (d)(1) and (e). 533 F.Supp. at 402. But the district court in that case, although acknowledging that the "legislative history ... is inconclusive," concluded nonetheless that "Congress did not intend witness fees to be paid to prisoners." *Id.* The court presented no justification for that conclusion. Moreover, the conclusion contradicts the Supreme Court's later teaching that, "[g]iven the plain words of the statute," Congress' intent is "best determined by the statutory language that it chooses." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 n. 13, 105 S.Ct. 3275, 3284 n. 13, 87 L.Ed.2d 346 (1985).

Third, the majority asserts that Congress must have intended to adopt those other

---

1. 28 U.S.C. § 1821(e) provides:
   An alien who has been paroled into the United States for prosecution, pursuant to section 212(d)(5) of the Immigration and Nationality Act (8 U.S.C. 1182(d)(5)), or an alien who either has admitted belonging to a class of aliens who are deportable or has been determined pursuant to section 242(b) of such Act (8 U.S.C. 1252(b)) to be deportable, shall be ineligible to receive the fees or allowances provided by this section.

2. 28 U.S.C. § 1821(d)(4) provides:
   When a witness is detained pursuant to section 3149 of title 18 for want of security for his appearance, he shall be entitled for each day of detention when not in attendance at court, in addition to his subsistence, to the daily attendance fee provided by subsection (b) of this section.

3. Moreover, the majority's view that subsection (d)(1)'s exclusion of "incarcerated" witnesses refers only to witnesses who are "detained" under subsection (d)(4), produces an illogical result under the literal terms of the statute. Under

that view, subsection (d)(1)'s reference to "a witness" would *include* all prisoners except "detained" prisoners under Section 3149 (now Section 3144), and thus most prisoners would be entitled to *subsistence* allowances in addition to attendance fees. It makes little sense to give subsistence allowances to ordinary prisoners when their subsistence needs already are being provided at taxpayer expense, and that result seems at odds with the policy benefits sought in the majority opinion.

4. *United States v. Garmany*, 762 F.2d 929, 933 n. 2 (11th Cir.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 811, 88 L.Ed.2d 785 (1986); *In re Grand Jury Matter (Witness RW)*, 697 F.2d 103, 104 (3d Cir.1982) (affirming *In re Witness Fees for Prisoner*, 533 F.Supp. 401, 403 (E.D.Pa. 1982)); *Marchese v. United States*, 197 Ct.Cl. 102, 453 F.2d 1268, 1271 (1972); *Meadows v. United States Marshal*, 434 F.2d 1007, 1008 (5th Cir.1970), *cert. denied*, 401 U.S. 1014, 91 S.Ct. 1265, 28 L.Ed.2d 551 (1971).

courts' interpretation of the statute because Congress has not substantively changed Section 1821 for many years: "Nowhere in the *express language* of the revisions [to Section 1821] or in the legislative history did Congress indicate criminal inmates ... were entitled to a witness fee." (Maj. Op. at 1345; emphasis added.) But the majority disregards the fact that the "express language" of the statute already unequivocally entitles witnesses, with no exclusion of "incarcerated" witnesses, to obtain witness attendance fees. It is difficult to fault Congress for failing to revise what already is clear. Again, "congressional silence, no matter how 'clanging,' cannot override the words of the statute." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 13, 105 S.Ct. 3275, 3284 n. 13, 87 L.Ed.2d 346 (1985).[5]

Fourth, the majority suggests that there are policy reasons militating against giving witness attendance fees to prisoners. The majority's concerns center on the fact that current attendance fees are higher than inmates' prison salaries, and consequently there is the potential for abuse. I do not dispute the legitimacy of those concerns, although I believe that district courts have the means—such as taking testimony by telephone or through depositions, or by imposing appropriate sanctions on abusive parties—to minimize the problem. But

even if I were to agree that the statute as written is misguided, that is no reason to overturn it by judicial fiat. The task of divining good policy "belongs to Congress, not to us." *Hurtado v. United States*, 410 U.S. 578, 591, 93 S.Ct. 1157, 1165, 35 L.Ed.2d 508 (1973).[6]

In conclusion, this is not an instance in which a statute produces an "unfathomable" result and "can't mean what it says." *Green v. Bock Laundry Machine Co.*, —— U.S. ——, ——, 109 S.Ct. 1981, 1985, 104 L.Ed.2d 557, 565 (1989). Section 1821 is neither internally inconsistent nor facially ambiguous. Under a plain reading of the statute, prisoners serving as witnesses are entitled to attendance fees but not to subsistence allowances. That result is neither illogical nor irrational. There is no legislative history showing conclusively that the statute does not mean what it says. Consequently, I would reverse the district court's judgments in these consolidated appeals and would hold that prisoners, like other witnesses, are entitled to witness attendance fees under Section 1821.

---

**5.** The majority cites *FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 437, 106 S.Ct. 1931, 1937, 90 L.Ed.2d 428 (1986), but that case has little to do with this one. In *Philadelphia Gear*, Congress expressly adopted the FDIC's definition of a key term—"deposit"—that was contained in the FDIC's organic statute. Unlike *Philadelphia Gear*, no administrative determination requiring special deference is involved here, and Congress has not changed Section 1821 to adopt the interpretation of an agency or court. Nor is this case like *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). In *Curran*, the Court held that an implied private right of action under the Commodity Exchange Act should be preserved when (1) Congress conducted a comprehensive reexamination and amendment of the Act and left intact the provisions under which numerous federal courts previously had implied a private right of action, and (2) the legislative history of the subsequent amendments indicated that Congress intended to preserve the private remedy. 456 U.S. at 381–82, 384–88, 102 S.Ct. at 1840–41, 1842–44. Here, unlike the situation in *Curran*,

the prior interpretation of the statute by other federal courts flatly contradicts the statute's plain language (as opposed to extending it), and there is no legislative history indicating that Congress intended to adopt those courts' interpretation.

**6.** It would be interesting to know whether there are any other categories of witnesses, besides prisoners, whom the majority would bar from receiving statutorily mandated fees and allowances. Can convicted criminals sentenced to government-supported "halfway houses" receive them? Convicted criminals sentenced to probation? Parolees? Residents of government-supported mental institutions? Government employees? Minor children? The point is that the majority nowhere explains why prisoners are to be excluded from the statute when other persons in potentially analogous situations are not. The inherent difficulty in making distinctions among categories of witnesses, especially in the face of an unambiguous, unrestricted statute, is itself a reason why the creation of those distinctions should be left to Congress.